IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

|  |  |  |
|---|---|---|
| DOROTHY N. FISCHER, | ) | |
| *Plaintiff,* | ) | |
| | ) | |
| vs. | ) | CASE NO. CIV-14-771 |
| | ) | |
| FMC TECHNOLOGIES, INC., | ) | |
| *Defendant.* | ) | |

DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND BRIEF IN SUPPORT

Respectfully submitted,

/s/Kerry E. Notestine
Adam W. Childers, OBA #18673

-- Of the Firm --

CROWE & DUNLEVY, P.C.
Braniff Building
324 North Robinson Avenue, Suite 100
Oklahoma City, OK 73102
405.235.7741 (Telephone)
405.272.5956 (Telecopier)
adam.childers@crowedunlevy.com

-- AND --

Kerry E. Notestine
(*pro hac vice*)
Texas State Bar No. 15116950
knotestine@littler.com
Jillian B. Mertz
(*pro hac vice*)
Texas State Bar No. 24072897
jmertz@littler.com
LITTLER MENDELSON, P.C.
1301 McKinney Street
Suite 1900
Houston, TX  77010
713.951.9400 (Telephone)
713.951.9212 (Telecopier)

I.      SUMMARY OF ARGUMENT .................................................................... 1

II.     STATEMENT OF MATERIAL UNDISPUTED FACTS ............................... 3

        A.      Fischer and Small Engage in Consensual Sexting Relationship.......................... 3

        B.      FMCTI Investigates Fischer's Complaint of Sexual Harassment......................... 6

        C.      FMCTI Makes Fischer A Conditional Offer of Employment ............................. 7

        D.      Fischer Fails Pre-employment Background Check................................. 7

III.    ARGUMENT AND AUTHORITIES.................................................................. 8

        A.      Fischer Cannot Establish a Prima Facie Case of Discrimination Based on
                Reverse Race Discrimination or Disability............................................ 8

                1.      Fischer Cannot Establish a Prima Facie Case of Reverse
                        Discrimination....................................................................... 9

                        a.      Fischer Fails to Show Circumstances that Support an
                                Inference of Reverse Discrimination ............................. 9

                        b.      Fischer Cannot Demonstrate Circumstances to Support an
                                Inference of Discrimination ........................................ 11

        B.      Fischer's Opinion is Insufficient to Establish a Claim of Discrimination
                Based on Disability................................................................. 11

        C.      FMCTI Revoked Fischer's Conditional Offer of Employment For a
                Legitimate Non-Discriminatory Reason: Her Failure to Pass a Criminal
                Background Check................................................................. 13

        D.      Fischer's Claim for Hostile Work Environment Based on Sexual
                Harassment Fails as a Matter of Law.................................................. 14

                1.      Fischer Engaged in a Consensual Sexting Relationship......................... 15

                2.      Construing the Facts in Favor of Plaintiff, She Cannot Show that
                        She was Subjected to Conduct that Rises to Unlawful Harm.................. 16

                3.      Fischer Cannot Establish that FMCTI Knew or Should Have
                        Known About the Alleged Behavior....................................... 21

                4.      The Undisputed Facts Demonstrate that No Liability for Sexual
                        Harassment Can be Imputed to FMCTI.................................... 22

        E.      Fischer Cannot Make a Claim of Unlawful Retaliation..................................... 23

## TABLE OF CONTENTS
### (CONTINUED)

**PAGE**

IV.     CONCLUSION.............................................................................................................. 24

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Adler v. Wal-Mart Stores*,
144 F.3d 664 (10th Cir. 1998) ......................................................................15, 21

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986)....................................................................................12

*Antonio v. Sygma Network, Inc.*,
458 F.3d 1177 (10th Cir. 2006) ..........................................................................12

*Beck v. Mays Homes Health, Inc.*,
2012 WL 1066151 (W.D. Oklahoma 2012) ...........................................................23

*Blankenship v. Parke Care Centers, Inc.*,
123 F.3d 868 (6th Cir. 1997) ...........................................................................22

*Bolden v. PRC Inc.*,
43 F.3d 545 (10th Cir. 1994) ...........................................................................17

*Bowdish v. Federal Express Corp.*,
699 F.Supp.2d 1306 (W.D. Oklahoma March 18, 2010).......................................9, 10

*Brown v. CSC Logic, Inc.*,
82 F.3d 651 (5th Cir. 1996) ............................................................................12

*Burlington Indus., Inc. v. Ellerth*,
524 U.S. 742 (1998)................................................................................17, 22

*Carrasco v. Boeing Co.*,
190 Fed. Appx. 650 (10th Cir. 2006).....................................................................20

*Courtney v. Landair Transp., Inc.*,
227 F.3d 559 (6th Cir. 2000) ...........................................................................21

*E.E.O.C. v. Goodwill Industries of Southwest Oklahoma and North Tex. Inc.*,
2013 WL 5460819 (W.D. Oklahoma 2013) ...........................................................16

*E.E.O.C. v. PVNF, L.L.C.*,
487 F.3d 790 (10th Cir. 2007) ..........................................................................11

*Faragher v. City of Boca Raton*,
524 U.S. 775 (1998)............................................................................15, 17, 22, 23

TABLE OF CONTENTS
(CONTINUED)

PAGE

*Harmon v. Sprint United Management Corp.*,
   264 F. Supp. 2d 964 (D. Kansas May 23, 2003)......................................................11

*Harris v. Forklift Sys.*,
   510 U.S. 17 (1993).................................................................................14, 16, 17

*Helm v. State of Kansas*,
   656 F.3d 1277 (10th Cir. 2011) ......................................................................23

*Hockman v. Westward Communications, LLC*,
   407 F.3d 317 (5th Cir. 2004) .........................................................................18

*Houston v. Independent School Dist. No. 89 of Oklahoma Cnty.*,
   2010 WL 988414 (W.D. Oklahoma March 12, 2010)........................................14

*Jencks v. Modern Woodmen of America*,
   479 F.3d 1261 (10th Cir. 2007) ...................................................................10, 13

*Jones v. Clinton*,
   990 F.Supp.657 (E.D. Ark. 1998)....................................................................18

*Loudermilk v. Stillwater Milling Co.*,
   551 F. Supp. 2d 281 (2008) ...........................................................................17

*McDonnell Douglas Corp. v. Green*,
   411 U.S. 792 (1973).........................................................................................8

*McKnight v. Kimberly Clark Corp.*,
   149 F.3d 1125 (10th Cir. 1998) .........................................................................8

*Meritor Savings Bank v. Vinson*,
   477 U.S. 57, 91 L. Ed. 2d 49, 106 S. Ct. 23999 (1986)....................................16, 18

*Morgan v. Hilti, Inc.*,
   108 F.3d 1319 (10th Cir. 1997) .........................................................................8

*O'Brien v. Lucas Associates Personnel, Inc.*,
   No. Civ. 302CV2572H, 2004 WL 1118790 (N.D. Tex. May 18, 2004) ...............18

*Pinkerton v. Colorado Dept. of Transportation*,
   563 F.3d 1052 (10th Cir. 2009) .........................................................................8

*Ploke v. White*,
   405 F.3d 1092 (10th Cir. 2005) ......................................................................13

TABLE OF CONTENTS
(CONTINUED)

PAGE

*Reynolds v. School Dist. No. 1, Denver,*
    69 F.3d 1523 (10th Cir. 1995) ............................................................................13

*Salguero v. City of Clovis,*
    366 F.3d 1168 (10th Cir. 2004) ..........................................................................11

*Shepherd v. Comptroller of Pub. Accounts,*
    168 F.3d 871 (5th Cir. 1999) ..............................................................................20

*Somoza v. Univ. of Denver,*
    513 F.3d 1206 (10th Cir. 2008) ............................................................................8

*Sprague v. Thorn Americas, Inc.,*
    129 F.3d 1355 (10th Cir. 1997) ....................................................................18, 20

*Thompson v. Surbec Environmental, L.L.C.,*
    2010 WL 565289 (W.D. Oklahoma 2010) ..........................................................8

*Weiss v. Coca Cola Bottling Co.,*
    990 F.2d 333 (7th Cir. 1993) ..............................................................................20

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

|  |  |  |
|---|---|---|
| DOROTHY N. FISCHER, | ) | |
| *Plaintiff*, | ) | |
| | ) | |
| vs. | ) | CASE NO. CIV-14-771 |
| | ) | |
| FMC TECHNOLOGIES, INC., | ) | |
| *Defendant*. | ) | |

DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND
BRIEF IN SUPPORT

Defendant FMC Technologies, Inc. ("FMCTI" or the "Company) moves under Rule 56

of the Federal Rules of Civil Procedure for complete summary judgment on all claims made by

Plaintiff Dorothy Fischer in this lawsuit.

I.      SUMMARY OF ARGUMENT

This is an employment discrimination and retaliation case in which the plaintiff, Dorothy

"Nicole" Fischer (Caucasian), alleges race and disability discrimination, sexual harassment, and

retaliation in violation of Title VII, the Americans with Disabilities Act, and Section 1981 of the

Civil rights Act.  Summary judgment is appropriate on all of Fischer's claims.

FMCTI is entitled to summary judgment because Fischer cannot establish a *prima facie*

case of race, disability, or sexual harassment.  Fischer's reverse racial discrimination claim fails

because she cannot demonstrate circumstances that support an inference of discrimination.  For

similar reasons, Fischer's discrimination claim based on disability fails because she has no

evidence beyond her opinion that disability played a part in the revocation of her conditional

offer of employment.  Even so, FMCTI has a legitimate business reason for revoking her offer of

employment – failure to pass a criminal background check.  Indeed, Fischer had two pending felony warrants out for her arrest for writing bad checks—a crime of dishonesty.

During her assignment at FMCTI, Fischer engaged in a consensual relationship with a co-worker.  The main form of correspondence between the two was to send sexually explicit text messages ("sexting") to one another.  The two exchanged multiple graphic text messages regarding undergarments from Victoria Secret and sexual dreams.  To the extent any of the behavior was unwelcome, Fischer's claim fails because she cannot show that the alleged isolated incidents affected the terms and conditions of her employment by rising to the level of severe or pervasive as required for actionable harassment.  It is further undisputed that there was no harassment after the investigation.  Lastly, Fischer's *prima facie* case fails because the alleged harasser was a co-worker.

Even if Fischer can establish a *prima facie* case of hostile work environment (which she cannot), the undisputed facts demonstrate that no liability for sexual harassment can be imputed to FMCTI.  FMCTI maintains a Harassment/Sexual Harassment policy and once Fischer reported she wanted the behavior to stop, FMCTI investigated Fischer's claims of harassment and took appropriate corrective action.

Lastly, there is no causal connection to support Fischer's claim that FMCTI revoked her conditional offer of employment in retaliation for the investigation into her sexual harassment claims.  In fact, FMCTI made her a conditional offer of permanent employment after the sexual harassment investigation was closed.  FMCTI revoked Fischer's conditional offer of employment because she had two pending felony warrants from just three years prior for writing two bad checks.  Because Fischer cannot show any animus associated with the revocation of her offer of employment, she cannot make a claim for retaliation.  Except for her own groundless

speculation, Fischer has insufficient evidence to support her claims.   Accordingly, FMCTI requests that the Court grant summary judgment on all of Fischer's claims.

II.   STATEMENT OF MATERIAL UNDISPUTED FACTS

1.   In November 2012 FMCTI brought on Fischer as a temporary worker through the temporary staffing agency, Resource MFG.   Exhibit 18, Deposition of Dorothy N. Fischer (herein after "Fischer depo.") 65:22 – 66:7.

2.   Fischer worked for the Quality Department as a Document Specialist and reported to Cutie Abraham (Indian).  Fisher depo. 66:14-17; Exhibit 1, Declaration of Cutie Abraham at ¶ 3.

A.   Fischer and Small Engage in Consensual Sexting Relationship.

3.   Sometime in early January 2013, Fischer began a consensual relationship with another FMCTI employee, Corey Small (African American).  Fischer depo. 104:7-15.  Fischer and Small sent each other sexually explicit text messages ("sexting") for months.  Fischer depo. 104:11-15.  For instance, Fischer sent Small text messages stating:

Fischer: "I had a dream last night that we were having sex it was a good dream."

Small: "Really so was it wet dream or did u just play with urself to finish it off."

Fischer: "I think it was wet cuz you were licking eat and I kept asking for dick then we did it that way."

AND

Fischer: "Yes no panties."

Small: "So are you giving yourself time to breath."

Fischer: "No didn't feel like wearing any."

AND

Fischer: "Going to Victoria secret in a bit I think."

Small: "Oh yeah whatcha getting."

Fischer: "Lacy satiny things."

4.      Exhibit 2, Text Messages.  Fischer stated at her deposition that Small never said anything inappropriate to her at work and almost all correspondence was by text message.  Fischer depo. 116: 6-8.

5.      Fischer and Small did not work in the same group and did not speak at work unless it was work-related.  Fisher depo. 80:5-7; 103: 17-18.   While Small may ask Fischer to prioritize an urgent task, he was not her supervisor, could not assign her tasks and had no impact on her day-to-day activities or responsibilities.   Fischer depo. 75:20-25; Exhibit 1, Abraham declaration at ¶¶ 3, 6.   Abraham supervised Fischer, controlled her day-to-day activities and assigned work; Exhibit 16, Organization Chart; Fischer depo. 75:20-25; and Exhibit 1, Abraham declaration at ¶ 3.

6.      In early April 2013 Fischer alleges that Small came up behind her and reached down her shirt.  Fischer was on the phone and responded by hitting Small with the phone, but did not verbally ask him to stop.   Fischer depo. 95:10 -20; 219: 4-13; 232:3-8; Exhibit 3, Investigative Report.

7.      Fischer and Small continued to exchange text messages throughout April and early May 2013.  Fischer depo. 96:23-97:1.  On April 18, 2013 the two exchanged the following text message correspondence:

Small: "I was just asking did you still want me I know you have a lot to deal with and I
        just thought you wasn't interested."

Fischer: "Yeah I still want you around and all."

Small: "Can you make arrangements so I can spend sometime with you next weekend."

Fischer: "Let me see what I can do I think it's possible."

8.      Exhibit 2, Text Messages.  On or before April 22, 2013 Fischer and Small had the following text message correspondence:

Small: "Hey I want to kiss you so bad, do you mind if I get bella gift for her birthday and you can pick it up this weekend when you come over"

Fischer: "Aww that's so nice of you sure that will be fine"
….

Small: "I hope you don't mind me doing that to you"

Fischer: "No I'm busy is all"

Small: "Oh okay so I can kiss you when I get ready and your ok with it"

9.      Exhibit 2, Text Messages.  The text messages indicate that on or about April 22, 2013, Small kissed her on the neck.  *Id.*

10.     At her deposition, Fischer testified that there was only one unwelcome text message.  Fischer depo. 206:17-20.  In response to an invitation to meet her and her daughter at the park on April 25, 2013, Small asked "can I lick ur clit today".  Exhibit 2, Text Messages.  To which Fischer responded "I was inviting you to the park with my daughter and I."  Exhibit 2, Text Messages; Fischer depo. 206:17-207:1.

11.     Small allegedly grabbed Fischer's chest a second time in late April 2013.  After it happened, Abraham became aware of the unwelcome behavior on May 2, 2013.  Fischer depo. 121:3-7; Exhibit 4, Abraham Journal; Exhibit 1, Abraham declaration at ¶ 7.  That same day, Abraham moved Fischer's workspace to another building and set up a time for Fischer to meet with Tracy Irvin (African American) in Human Resources to discuss the incident.  Fischer depo. 109:23 – 110:7; Exhibit 1, Abraham declaration at ¶9.  Abraham kept a daily journal and documented that she was informed about Fisher's Human Resources issue on May 2, 2013.  Exhibit 4, Abraham Journal.  Abraham had no knowledge nor is there documentation regarding a

complaint of harassment made prior to May 2, 2015.  Exhibit 1, Abraham declaration at ¶ 7; Exhibit 3, Investigative Report.

B.    FMCTI Investigates Fischer's Complaint of Sexual Harassment.

12.    After meeting with Fischer, Irvin brought in a neutral third-party investigator, Jason Van Hoozen (Caucasian) to investigate Fischer's claims.  Fischer depo. 122: 8-24; Exhibit 3, Investigative Report; Exhibit 5, Declaration of Jason Van Hoozen.

13.    On May 13 and 14th, Van Hoozen interviewed Fischer, Abraham, and Small as part of the investigation.  Exhibit 3, Investigative Report.  Fischer stated during her interview with Van Hoozen that she had no reporting relationship with Small.  Exhibit 3, Investigative Report.  Fischer further stated that she did not ask Small to stop the behavior because she did not like confrontation and was worried about rumors.  Exhibit 3, Investigative Report; Fischer depo. 98:9-24.

14.    The Investigative Report states that Fischer blamed her medical condition for her willing participation in the conversation being transmitted.  Exhibit 3, Investigative Report.

15.    Van Hoozen concluded that the relationship between Fischer and Small had been consensual.  Exhibit 3, Investigative Report; Exhibit 5, Van Hoozen declaration at ¶ 7.  Van Hoozen reported that Fischer confirmed that after Irvin (Human Resources Generalist) encouraged her to notify Small that she wanted the communication to cease, the behavior had stopped.  Exhibit 3, Investigative Report.  Van Hoozen confirmed that all correspondence had stopped after the investigation.  Exhibit 3, Investigative Report;[1] Fischer depo. 130:14-23.  FMCTI reprimanded Small and required Small to compete corrective actions because of his unprofessional behavior.  Exhibit 17, Small Corrective Action.

---

[1] Van Hoozen confirmed in his declaration attached as Exhibit 5 that the Investigative Report is an accurate description of the statements made by Fischer during the investigation.

C.    FMCTI Makes Fischer A Conditional Offer of Employment.

16.    After the investigation, Fischer applied for and received a conditional offer of permanent employment with FMCTI on July 2, 2013.   Exhibit 6, Fischer's Application for Employment; Exhibit 7, Offer Letter.   Jeff Peterson (Caucasian) and Abraham made the decision to make Fischer a conditional offer of employment.   Exhibit 7, Offer Letter; Exhibit 8, Email Acceptance by Fischer; Exhibit 1, Abraham declaration at ¶ 12.   Irvin did the paperwork, but did not make the hiring decision.   Fischer depo. 97: 16-24.

17.    Fischer's offer of employment was contingent upon her ability to provide proof of the ability to work in the United States, successfully passing a background check, and a pre-employment physical examination and substance abuse test.   Fischer depo. 147:2-23; Exhibit 7, Offer letter.

18.    Fischer was concerned that some of the medications she was taking would show up on the substance abuse test, so she emailed Mary Allen, Human Resources Assistant to put her on notice of the medication she was currently taking.   Fischer depo. 148:2-21.

D.    Fischer Fails Pre-employment Background Check.

19.    The background check showed that Fischer currently had two outstanding felony warrants out for her arrest for writing bad checks in 2010.   Exhibit 9, DISA Background Check Documents; Fischer depo. 150:1-4.   Allen spoke with Fischer about the charges.   Fischer did not deny that she currently had two felony charges pending for her arrest and stated only that she made "bad decisions."   Fischer depo. 55:22-56:3.

20.    Because of the two felony pending charges for writing bad checks, Lamonica Spivey (African American) made the decision to revoke Fischer's conditional offer of employment.   Exhibit 10, Declaration of LaMonica Spivey ¶ 6; Exhibit 11, July 12, 2013 Revocation of Employment Letter.

21.     FMCTI is an equal opportunity employer and maintains a Harassment/Sexual Harassment policy that prohibits harassment of any kind.   Exhibit 12, Harassment/Sexual Harassment policy.  FMCTI's Application for employment further states that "[i]t is the policy of FMC Technologies to provide equal opportunity for all qualified persons and not to discriminate against any applicant for employment because of race, color, religion, national origin, sex, sexual orientation, age, disability, veteran status, citizenship, or any other characteristic protected by federal, state, or local law…".  Exhibit 6, Fischer's Application for Employment.

## III.     ARGUMENT AND AUTHORITIES

A.     Fischer Cannot Establish a *Prima Facie* Case of Discrimination Based on Reverse Race Discrimination or Disability. [2]

Fischer alleges no direct evidence of discrimination.  To evaluate discrimination claims that are based on indirect evidence, courts use the so-called *McDonnell Douglas* burden shifting analysis.  *See McKnight v. Kimberly Clark Corp.*, 149 F.3d 1125 (10th Cir. 1998) (*citing and following McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-804 (1973)).  Under the *McDonnell Douglas* analysis, the Plaintiff bears the burden of establishing a *prima facie* case of discrimination.  *Morgan v. Hilti, Inc.*, 108 F.3d 1319, 1323 (10th Cir. 1997) (applying the *McDonnell Douglas* analysis).  If the plaintiff presents a *prima facie* case, then the burden shifts to the defendant to offer evidence suggesting a legitimate non-discriminatory reason for the adverse employment action taken against the plaintiff.  *Id.*  The ultimate burden reverts to the plaintiff to demonstrate an issue of material fact as to whether the proffered reason is pretextual.

Fischer cannot establish a *prima facie* case of discrimination based on reverse race discrimination or disability.  Even assuming for the purposes of argument only that Fischer could

---

[2] Fischer's claims under Title VII and Section 1981 are subject to the same analysis under the *McDonnell Douglas* burden shifting framework used in Title VII cases.  *Thompson v. Surbec Environmental, L.L.C.*, 2010 WL 565289 (W.D. Oklahoma 2010); *Pinkerton v. Colorado Dept. of Transportation*, 563 F.3d 1052, 1064 (10th Cir. 2009); *Somoza v. Univ. of Denver*, 513 F.3d 1206, 1210 (10th Cir. 2008).

establish a *prima facie* case of unlawful discrimination, she cannot overcome FMCTI's legitimate, non-discriminatory reason for revoking her conditional offer of employment–failure to pass a pre-employment background check.   Accordingly, summary judgment on Fischer's claim of discrimination based on race and disability is appropriate.

      1.      <u>Fischer Cannot Establish a Prima Facie Case of Reverse Discrimination.</u>

           a.      Fischer Fails to Show Circumstances that Support an Inference of Reverse Discrimination.

While Title VII prohibits all discrimination on the basis of race, case law requires a modified approach to a claim asserted by a member of a majority group, where, as here, Fischer lacks direct evidence of discrimination. *Bowdish v. Federal Express Corp.*, 699 F.Supp.2d 1306, 1315-16 (W.D. Oklahoma March 18, 2010).   Thus, in lieu of a showing that she belonged to a protected group, Fischer must establish background circumstances that support an inference that FMCTI is one of those unusual employers who discriminates against the majority. *Id*. at 1316. Fischer's claims are insufficient to make this showing.

Fischer's claim of race discrimination complain of two events: (1) Irvin's treatment of her during the investigation and (2) revocation of her offer of employment.   Unlawful discrimination was not a basis for either of these events.

Fischer claims that Irvin treated her unfairly during the investigation because she and Small were good friends.   Fischer depo. 163:24-25; 164:16-18.   Friendship, however, is not evidence of discrimination. *See Bowdish*, 699 F.Supp.2d at 1316 (noting unfair treatment must be related to race).   Fisher further testified that Van Hoozen (Caucasian) and Irvin (African American) both treated her unfairly by asking her several times if she had sex with Small. Fischer depo. 164.   Despite Van Hoozen (Caucasian) allegedly participating in the same questioning, Fischer testified that it was only Irvin (who is black) that treated her unfairly

because of her race.  Fischer depo. 164-165:18.  Accordingly, any inference of discrimination is undermined by the fact that Van Hoozen (who is also Caucasian) engaged in the same line of questioning.   Likewise, Fisher's speculation that Irvin treated her differently during the investigation because some people see it as an "insult" for an African American man to be with a Caucasian female is insufficient to support a discrimination claim based on race.  Fischer depo. 164:16-22; *Jencks v. Modern Woodmen of America*, 479 F.3d 1261, 1267 (10th Cir. 2007) (*citing Branson v. Price River Coal Co.*, 853 F.2d 768, 772) (10th Cir. 1988)) (citations omitted) (finding speculation insufficient to defeat summary judgment).   Accordingly, Fischer cannot show that Irvin treated her unfairly during the investigation.  Furthermore, Van Hoozen who is Caucasian, led the investigation and concluded that Fischer engaged in a consensual relationship with Small.  Exhibit 5, Van Hoozen declaration; Exhibit 3, Investigative Report.   Therefore, Fischer cannot demonstrate that FMCTI conducted a biased investigation of her claims because she is Caucasian.

Secondly, Fischer's claim that FMCTI revoked her conditional offer of employment because she is Caucasian and Irvin, Small, and Allen are African American is without merit.  Fischer depo. 163:10-19.   None of these individuals made the decision to revoke Fischer's conditional offer of employment.  Exhibit 10, Spivey declaration at ¶¶ 6, 7.  In addition, Fischer must do more than simply allege she is Caucasian and the alleged decision-makers are African American.  *Bowdish*, 699 F. Supp. 2d at 1316-17 (W.D. Oklahoma March 18, 2010) (quoting *Notari v. Denver Water Dep't*, 971 F.2d 585, 589 (10th Cir. 1992).  Fisher must present evidence showing that FMCTI favors minority groups, which she fails to do.  *Id*.  In fact, it is undisputed that the many of individuals Fischer worked with in the Quality Department were Caucasian.

Exhibit 1, Abraham declaration at ¶ 4.  Accordingly, Fischer fails to make a sufficient showing to satisfy the first element of her *prima facie* case of race discrimination.

> b.   Fischer Cannot Demonstrate Circumstances to Support an Inference of Discrimination.

Fisher's *prima facie* case of reverse race discrimination also fails because her allegations do not demonstrate circumstances to support an inference of discrimination.  *See Salguero v. City of Clovis*, 366 F.3d 1168, 1175 (10th Cir. 2004); *see also E.E.O.C. v. PVNF, L.L.C.*, 487 F.3d 790, 800 (10th Cir. 2007) (finding an inference of discrimination may arise from disparate discipline of individuals who are "similarly situated").  Fischer cannot show that any similarly situated candidates had two recent pending felony charges and did not have their offer of employment revoked.  In fact, during the time period in question (January 1 to August 2013), FMCTI revoked offers of employment from two African American and a Hispanic candidate at the Oklahoma facility for failure to pass a pre-employment background check.[3]  Accordingly, Fischer fails to establish an inference of a racially discriminatory motive for revoking her offer of employment required to overcome FMCTI's motion for summary judgment.

B.   <u>Fischer's Opinion is Insufficient to Establish a Claim of Discrimination Based on Disability.</u>

Similarly, Fischer's disability claim fails because she cannot show FMCTI refused to hire her under circumstances giving rise to an inference that the decision was based on her disability.  *Harmon v. Sprint United Management Corp.*, 264 F. Supp. 2d 964 (D. Kansas May 23, 2003) (*quoting Morgan*, 108 F.3d at 1323).  Fischer does not claim that she was harassed because of her disability; instead, she testified at her deposition that it was her <u>opinion</u> that disability played a part in the decision to revoke her offer of employment:

---

[3] Not including Fischer, FMCTI revoked the following candidates' offer of employment at the Oklahoma City facility for failure to pass a pre-employment background check: Gasca (Hispanic); Price (African American); Ford (African American); Hargrove (Caucasian).  Exhibit 13, Revocation Letters.

Q:      You do not know.  So you're speculating ---

A:      No.

Q:      -- that your disability played a part?

A:      I am saying that it is my opinion.

Q:       That's your opinion.  Right.  You have no other reason to or evidence to believe
        that?

A:      That is my opinion.

Fischer depo. 167:25-168:6. Fischer's opinion is insufficient evidence to overcome a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986) ("[A] party opposing a properly supported motion for summary judgment may not rest upon mere allegation or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial.").

In fact, FMCTI had knowledge of her alleged disability prior to making her a conditional offer of employment.  The Investigative Report states Fischer "stated that she had a medical condition that prevented her from having control of her behavior at times.  After being confronted with the sexually explicit text messages, she blamed her medical condition for her seemingly willing participation."  Exhibit 3, Investigative Report.  After the investigation was concluded, FMCTI made an offer of employment to Fischer.  It defies logic that FMCTI would make her an offer only to discriminate against her by rescinding the offer because of her disability.  Indeed, claims that FMCTI had animus in revoking the offer but not in making the offer of employment does not make sense. *Antonio v. Sygma Network, Inc.*, 458 F.3d 1177, *1183 (10th Cir. 2006) (recognizing the inference makes pretext difficult to show); *see also Brown v. CSC Logic, Inc.*, 82 F.3d 651, 658 (5th Cir. 1996).  Accordingly, Fischer cannot

establish a *prima facie* case of discrimination as there is no reason to believe that FMCTI revoked her conditional offer of employment because of her disability.

C.     FMCTI Revoked Fischer's Conditional Offer of Employment For a Legitimate Non-Discriminatory Reason: Her Failure to Pass a Criminal Background Check.

Even assuming that Fischer can establish a *prima facie* case of discrimination based on race and/or disability (which she cannot), summary judgment is warranted because Fischer cannot prove that a genuine issue of material fact exists regarding whether FMCTI's legitimate non-discriminatory reason for revoking her conditional offer of employment was pretext for discrimination. *Ploke v. White*, 405 F.3d 1092, 1099 (10th Cir. 2005). To show pretext, Fischer must show "that the tendered reason for the employment decision was not the genuine motivating reason, but rather was a disingenuous or sham reason." *Reynolds v. School Dist. No. 1, Denver*, 69 F.3d 1523, 1535 (10th Cir. 1995). "Mere conjecture that the employer's explanation is pretext is insufficient basis to defeat summary judgment." *Jencks v. Modern Woodmen of America*, 479 F.3d 1261, 1267 (10th Cir. 2007) (*citing Branson v. Price River Coal Co.*, 853 F.2d 768, 772) (10th Cir. 1988)) (citations omitted). In this case, Fischer has failed to present evidence sufficient to create a material fact dispute regarding whether the reason for the revocation of her offer of employment was pretextual.

It is undisputed that FMCTI requires candidates to pass a pre-employment background check for employment at its Oklahoma City facility. Exhibit 10, Spivey declaration at ¶ 4; Fischer depo. 147:10-23; 150:5-21; Exhibit 14, Background Check Authorization. It is further undisputed that Fischer's background check came back showing that she had two pending felony warrants out for her arrest for writing bad checks. Fischer depo. 150: 13-21; Exhibit 9, DISA Background Check. Accordingly, Spivey made the decision to revoke Fischer's conditional

offer of employment because of her criminal background.  Exhibit 10, Spivey declaration at ¶ 6; Exhibit 11, Revocation of Employment Letter.

The only evidence Fischer offers to rebut FMCTI's legitimate reason is that her felony charges were only pending and not convictions.  Because FMCTI only asked about convictions on its application, Fischer surmises that the revocation of her offer of employment was pretextual.  Fisher depo. 159:1-10; 161: 10-18.  Indeed, Fischer conceded at her deposition that FMCTI could revoke her conditional offer of employment because of the pending charges:

> Q:    And you don't—do you think that FMC couldn't revoke your conditional offer of employment because you had a pending charge?
>
> A:    They could have, but that is not what it asked on the application.

Fischer depo. 159:1-10.  Accordingly, there is no evidence showing that FMCTI's stated reason for revoking Fischer's conditional offer of employment was false.  Because Fischer cannot provide any evidence to overcome FMCTI's legitimate business reason for revoking the offer, Fischer's claim must be dismissed.

D.     Fischer's Claim for Hostile Work Environment Based on Sexual Harassment Fails as a Matter of Law.

Fischer claims that FMCTI subjected her to a hostile work environment based on her gender.[4]  The harassment Fischer complains of, however, was not unwelcome.  To the extent there was any unwelcome behavior, there were only isolated incidents that did not affect the terms or conditions of her employment by rising to the level of severe or pervasive as required to make an actionable claim of harassment.  *Houston v. Independent School Dist. No. 89 of Oklahoma Cnty.*, 2010 WL 988414 (W.D. Oklahoma March 12, 2010); *Harris v. Forklift Sys.*,

---

[4] Title VII also prohibits quid pro quo sexual harassment.  There is no evidence in the record that Fisher is alleging quid pro quo sexual harassment.  Fischer stated during the investigation that there "had never been any promises, threats, or any quid pro quo in exchange for sexual favors."  Exhibit 3, Investigative Report; Fischer depo. 127:16-128-2.  Therefore, FMCTI will not provide briefing on this issue.

510 U.S. 17, 21-22 (1993).   Moreover, even in the alternative, summary judgment is appropriate because FMCTI cannot be vicariously liable for co-worker harassment unless FMCTI knew or should have known of the alleged conduct.   *Adler v. Wal-Mart Stores*, 144 F.3d 664 (10th Cir. 1998).   Likewise, FMCTI can assert the affirmative defense that it investigated Fischer's claims and put an end to the alleged harassment.   *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998).

1.     <u>Fischer Engaged in a Consensual Sexting Relationship.</u>

It is undisputed that Fischer engaged in a consensual sexting relationship with Small. Fischer depo. 114:14-20;115:16-22.   As outlined above, the two exchanged explicit sexual text messages regarding Fischer going to Victoria Secret to buy "lacy, satiny things" and sexual desires – "I think it was wet because you were licking eat.   I kept asking for dick, and then we did it that way."  Exhibit 2, Text Messages; Fischer depo. 235:10-25.

Fischer testified that she verbally broke off all but twenty-five percent of the contact she had with Small the last week in March 2013.  Fischer depo. 96:23-97:1.  The two continued to engage in regular text message correspondence.  *Id.*  Small allegedly grabbed her chest in early April 2013.  Instead of telling Small to stop, she hit him with the phone receiver.  Fischer depo. 231: 19-25.  She never told him "don't touch me at work".  Fischer depo. 232:3-8; Exhibit 3, Investigative Report.  Fischer and Small continued to text back and forth and make plans to meet on more than one occasion.  Fischer depo. 96:23-97:1; Exhibit 2, Text Messages.  On or about April 22, 2013 Small and Fischer had the following text message correspondence:

Small: "Hey I want to kiss you so bad…"

…

Small: "I hope you don't mind me doing that to you."

Fischer: "No I'm just really busy is all"

Exhibit 2, Text Messages.   The text messages indicate that same day Small attempted to kiss Fischer.   Exhibit 2, Text Messages.   Fischer further texted Small on April 18, 2015 "I still want you around."   Exhibit 2, Text Messages.   Fischer testified that around this time (mid-April) Small grabbed her chest a second time**.**   Fischer depo. 121:1-2.   She received a text message from Small on April 25, 2013 stating "can I lick ur clit today" to which Fischer responded "I was inviting you to the park with my daughter and I."   Exhibit 2, Text Messages.   While Fischer testified that she tried to "blow off" or "pacify" Small, her actions did not make clear that the behavior was unwelcome.   Fischer depo. 129:24-130:5.   Moreover, during the investigation when asked to review the text messages and provide some indication of the communications not being consensual, she was not able to.   Exhibit 3, Investigative Report.   Instead, Fisher blamed her medical condition for not having control of her behavior.   Exhibit 3, Investigative Report. Accordingly, Fischer cannot now make a claim of unwelcome harassment based on the conduct she alleges.

> 2.   Construing the Facts in Favor of Plaintiff, She Cannot Show that She was Subjected to Conduct that Rises to Unlawful Harm.

To the extent that any complained of behavior was unwelcome, the acts do not rise to the level of severe or pervasive required to make a claim of actionable harassment.   *Meritor Savings Bank v. Vinson*, 477 U.S. 57, 91 L. Ed. 2d 49, 106 S. Ct. 23999 (1986).   Whether sexual harassment occurs is determined by examining the totality of the circumstances.   *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21 (1993) ("For harassment to affect a term, condition, or privilege of employment, it must be both objectively and subjectively abusive.").   Conditions that should be evaluated include "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance."   *E.E.O.C. v. Goodwill*

*Industries of Southwest Oklahoma and North Tex. Inc.*, 2013 WL 5460819, *8 (W.D. Oklahoma 2013). Conduct that is "merely offensive" is not actionable. *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998). Rather, "the conduct must be extreme to amount to a change in the terms and conditions of employment…". *Faragher*, 524 U.S. at 788; *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 765 (1998).

To begin with, it is undisputed that Fischer and Small engaged in a consensual sexting relationship. Fischer depo. 114:14-20; 115:16-22. Even assuming the behavior became unwelcome in April 2013, the isolated acts Fischer complains of are insufficient to support her claim. *Bolden v. PRC Inc.*, 43 F.3d 545, 551 (10th Cir. 1994) (recognizing there must be a "steady barrage" of offensive comments); *see also Loudermilk v. Stillwater Milling Co.*, 551 F. Supp. 2d 281 (2008) (granting summary judgment for isolated co-worker harassment).

At her deposition, Fischer stated that instead of asking Small to stop after he grabbed her in mid-April 2013, she hit him with the phone receiver. Fischer depo. 95:10 -20; 219: 4-13; 232:3-8. Accordingly, because she did not ask Small to stop, this act cannot support Fischer's harassment claim. At her deposition, Fischer further stipulated to the fact that after Abraham learned of the harassment on May 2, 2015, the harassment stopped. Fisher depo. 130:14-23; Exhibit 3, Investigative Report. In fact, Irvin encouraged Fischer to make clear to Small that the behavior was unwelcome, and after she did so, the behavior ceased. Exhibit 3, Investigative Report. Accordingly, the only acts that can support her claim of unwelcome harassment is the alleged grab in mid-April, alleged kiss on the check, and the text message from Small asking to "lick her clit." Even taken together and viewed in a light favorable to Fischer, these isolated incidents (one by text message) are not sufficiently severe to withstand summary judgment. *See Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23, (1993) ("Severity and pervasiveness are evaluated

according to the totality of the circumstances"); *Sprague v. Thorn Americas, Inc.,* 129 F.3d 1355, 1366 (10th Cir. 1997) (noting one act occurred outside of work).

Even if the Court considers the first grabbing incident where Fischer failed to make known that behavior was unwelcome, which it should not, Fischer still has not put forth sufficient evidence to raise a fact issue with regard to her hostile work environment claim. *See Meritor Sav.* Bank, 477 U.S. at 67 (stating it is clear that not all "workplace conduct that may be described as 'harassment,' affects a 'term, condition, or privilege' of employment within the meaning of Title VII"); *Hockman v. Westward Communications, LLC*, 407 F.3d 317, 326 (5th Cir. 2004).

Secondly, Fischer's sexual harassment allegations are not objectively hostile because, according to Fischer, the complained of conduct neither unreasonably interfered with her work performance nor undermined her work competence as required to state a cognizable hostile work environment claim. Fischer depo. 103: 13-22; Exhibit 1, Abraham declaration at ¶¶ 8, 12. To the contrary, despite the alleged harassment that Fischer allegedly suffered, she was a top performer. Exhibit 1, Abraham declaration at ¶12. In fact, despite Fischer's contention that Small grabbed and kissed her while on the phone, assisting customers, even the advances did not interfere with her ability to perform her job duties and assist customers. Fischer depo. 95:10-96:1. The fact that Fischer received a job offer is also fatal to her hostile work environment claim, as it proves that the alleged harassment simply did not affect a term, condition, or privilege of employment. *See O'Brien v. Lucas Associates Personnel, Inc*., No. Civ. 302CV2572H, 2004 WL 1118790, at *5 (N.D. Tex. May 18, 2004) (explaining that the plaintiff's hostile work environment claim failed, amongst other reasons, because the plaintiff testified that despite the demeaning atmosphere, she "was always a top performer"); *see also Jones v. Clinton*,

990 F.Supp.657, 675 (E.D. Ark. 1998) (stating satisfactory job performance dispels the notion that Plaintiff was subjected to a hostile work environment).

Furthermore, Small did not supervise Fischer and therefore, could not (nor does Fischer allege that he did) affect a term or condition of her employment.  Fischer depo. 75:20-25; 78-80; Exhibit 1, Abraham declaration at ¶6.  Indeed, the organizational chart attached as Exhibit 16 (which depicts the makeup and reporting structure of the Quality Department during the time of Fischer's assignment) shows Small had no authority over Fischer.  Fischer testified that Small did not talk to her at work "unless it was work-related" and never said anything inappropriate to her at work.  Fischer depo. 103: 17-18; 116:6-8.  Fischer and Small worked for different departments, Small's office was at the front of the building, and they had no reason to have daily face-to-face interaction.  Fischer depo.92:15-19; Exhibit 1, Abraham declaration at ¶ 3.  In fact, Fischer testified that the only way that Small could affect her employment was by "spreading rumors" and "telling people that I was doing this or I was doing that, spreading these rumors. Rumors get around."  Fischer depo. 98:9-24.  Fear of possible rumors by a co-worker is not sufficient to constitute a severe and pervasive work environment based on gender.

Additionally, the text message correspondence from Fischer to Abraham on April 18, 2013 (during the time of the alleged harassment) does not indicate that Fischer was subjected to a hostile work environment.  Indeed, Fischer stated "…Very glad to be back, thank you for all your help".  Exhibit 15, Text Messages with Abraham.  Fischer further indicated to Abraham on more than one occasion that she enjoyed working at FMCTI.  Exhibit 1, Abraham declaration at ¶ 8.  Simply put, the alleged harassment did not destroy Fischer's opportunity to succeed in the workplace, and because she did in fact succeed, her hostile work environment claim fails.

Finally, Fischer's hostile work environment claim fails for the independent reason that in similar cases Courts have found judgment as a matter of law appropriate in cases with facts far more egregious than those Fischer alleges.  In *Sprague* a male coworker made unpleasant and boorish comments to a female employee.   The co-worker told Plaintiff to unbutton her top button, called her a girl and discussed PMS.  He further put his arm around the Plaintiff and looked down her dress, stating '"well, you got to get it when you can.'"  He further responded "that sounds kind of kinky'" to a comment made by Plaintiff.  The Court held that there was not a showing sufficient to avoid summary judgment.  *Sprague v. Thorn Americas, Inc.*, 129 F.3d 1355 (10th Cir. 1997).

Similarly, in *Shepherd*, the plaintiff testified that her co-worker told her," your elbows are the same color as your nipples," and "you have big thighs" while he simulated looking under her dress.  *Shepherd v. Comptroller of Pub. Accounts*, 168 F.3d 871, 872 (5th Cir. 1999).  In addition, the alleged wrongdoer in *Shepherd* stood over the plaintiff's desk and tried to look down her clothing.  *Id*.  He also "touched her arm on several occasions, rubbing one of his hands from her shoulder down to her wrist while standing beside her." *Id*.  Finally, on two occasions, the alleged sexual harasser patted his lap and remarked to the plaintiff, "here's your seat."  *Id*. Once again, the Court held that these outrageous comments were not sufficiently severe or pervasive to alter the workplace environment and therefore, affirmed summary judgment.  *Id.* at 874-75; *see also Weiss v. Coca Cola Bottling Co.,* 990 F.2d 333, 337 (7th Cir. 1993) (affirming summary judgment in favor of the employer where the alleged sexual harasser asked the plaintiff out on dates, asked about the plaintiff's personal life, told the plaintiff how beautiful she was, called the plaintiff a "dumb blonde", put his hand on her shoulder several times, placed "I love you" signs in her work area, and attempted to kiss her three times.); *see also Carrasco v. Boeing Co.*, 190

Fed. Appx. 650 (10th Cir. 2006) (insufficient allegations to create a severe or pervasive hostile work environment where manager repeatedly made inappropriate comments such as "I can tell you have gained weight because your jeans are tight in all the right places", fantasized about the two of them "being together" and going on vacation, told Plaintiff that he needed to measure her shorts "from the inside of [her] thigh", asked if Plaintiff tanned naked, and asked several times to see Plaintiff's thong underwear).

Compared to these cases, Fischer's harassment allegations (even all alleged unwelcome behavior) if taken as true, are mild and are simply not sufficient to state an actionable hostile work environment claim. In fact, Fischer testified that the worst thing that FMCTI did to her was to call her a liar. Fischer depo. 170:21-23. Summary judgment, therefore, is warranted on Fischer's sexual harassment claims.

    3.    <u>Fischer Cannot Establish that FMCTI Knew or Should Have Known About the Alleged Behavior.</u>

Because Small was Fischer's non-supervisory co-worker, FMCTI is not vicariously liable for his actions and Fischer's *prima facie* case fails. Fischer depo. 75:20-25. It is well-established that there is no vicarious employer liability for co-worker harassment. *Adler v. Wal-Mart Stores*, 144 F.3d 664 (10th Cir. 1998) (finding no liability where plaintiff alleged sexual harassment by fellow employees). What applies instead is a negligence standard; that is, an employer will be held liable for an atmosphere of sexual harassment by a co-worker only if it knew or should have known of the harassment and failed to act. *Id.*

The first time Abraham had knowledge that Fischer wanted the alleged harassment to stop was May 2, 2013. Exhibit 1, Abraham declaration at ¶¶ 7, 11; Exhibit 4, Abraham Journal. To the extent Fischer alleges she told Abraham prior to May 2nd, it was not clear that she was making a complaint of harassment. *Courtney v. Landair Transp., Inc.*, 227 F.3d 559 (6th Cir.

2000) (holding while the plaintiff sent three separate letters chronicling harassment at the workplace, the was no actual notice until the third letter, in which the plaintiff requested that the defendant stop the harassment).  Fischer herself concedes that she did not think she made a complaint prior to May 2, 2013.  Fischer depo. 180:1-4.  FMCTI promptly removed Fischer from the building with Small and investigated her claims upon learning that Fischer wanted the alleged harassment to stop.  Accordingly, even if Fischer can establish a *prima facie* case of hostile work environment (which she cannot), she cannot hold FMCTI vicariously liable for Small's actions.  *Blankenship v. Parke Care Centers, Inc.*, 123 F.3d 868 (6th Cir. 1997) (holding regardless of the severity of the co-worker's conduct, Plaintiff failed to establish the element of "respondeat superior" necessary to hold the employer liable).  Thus, summary judgment in favor of FMCTI on Fischer's harassment claim must be granted.

4.     The Undisputed Facts Demonstrate that No Liability for Sexual Harassment Can be Imputed to FMCTI.

It is undisputed that Small was not a supervisor of Fischer, including not having any role in the decision to offer or rescind Fischer's conditional offer of employment.  Exhibit 10, Spivey declaration at ¶ 6; Exhibit 8, Email Acceptance by Fischer.  Because there is no quid pro quo allegation here, FMCTI can avail itself of the *Faragher/Ellerth* affirmative defense.  *Faragher*, 524 U.S. at 778 (1998); *Burlington Indus. v. Ellerth*, 524 U.S. 742, 765 (1998) (where the employee did not suffer a materially adverse employment action related to the sexual harassment, and the Company can demonstrate that (1) it exercised reasonable care to prevent and correct any harassing behavior, and (2) the employee "unreasonably failed to take advantage of any preventative or corrective opportunities provided by the employer to avoid harm").

Because FMCTI can establish all elements of the *Faragher/Ellerth* affirmative defense, there is no basis for imputing liability for Fischer's claims of harassment.  FMCTI has a policy in

place prohibiting the sexual harassment raised by her.    Exhibit 12, Harassment/Sexual Harassment Policy.  The documentation created at the time of the events in 2013 indicate that Fischer did not make a complaint prior to May 2, 2013.  Exhibit 4, Abraham Journal; Exhibit 3, Investigative Report.  Even so, Fischer further testified at her deposition that although she spoke with Abraham in mid-April about Small, she did not really think that she was making a complaint.  Fischer depo. 180:1-4.  Fischer stipulated that after the last incident and report to Abraham the behavior stopped.  Fischer depo. 130:18-24; Exhibit 3, Investigative Report.

When Fischer reported harassment on May 2, 2013, Abraham moved her workspace and Human Resources launched an investigation into Fischer's claims.  Fischer depo. 109:23 – 110:7; Exhibit 1, Abraham declaration at ¶ 9; Exhibit 17, Small Corrective Action.  FMCTI counseled Small about his behavior, and gave him a formal written reprimand.  FMCTI further required Small to read, review, and comply with the company's harassment free workplace policy; and limit his interaction with Fischer.  Exhibit 17, Small Corrective Action.  Accordingly, FMCTI "exercised reasonable care to prevent" and promptly correct sexual harassment.  *Faragher*, 524 U.S. at 778; *see also Helm v. State of Kansas*, 656 F.3d 1277 (10th Cir. 2011) (upholding summary judgment based on *Ellerth/Faragher* defense).    Because FMCTI can establish its affirmative defense, summary judgment on Fischer's claims is appropriate.

E.      Fischer Cannot Make a Claim of Unlawful Retaliation.

To establish a *prima facie* case of retaliation, Fischer must show that the decision to revoke her conditional offer of employment resulted from retaliatory animus.  *Beck v. Mays Homes Health, Inc.*, 2012 WL 1066151, *6 (W.D. Oklahoma 2012) (*quoting Medlock v. Ortho Biotech, Inc.*, 164 F.3d 545, 549 (10th Cir. 1999).  Fischer claims that FMCTI revoked her conditional offer of employment in retaliation for making a claim of harassment.  Fischer depo. 194:17-195:1.  Fischer's retaliation claim fails because the undisputed evidence shows no causal

connection existed between the sexual harassment case and revocation of her offer of employment.

FMCTI made Fischer a conditional offer of employment <u>after</u> the investigation into her complaint of sexual harassment.  Fischer depo. 186:21-187:9.  There is no dispute that Abraham and Peterson knew about the sexual harassment investigation prior to making Fischer a conditional offer of employment in July 2013.  Fischer depo.145:11-16; Exhibit 1, Abraham declaration at ¶10.  As explained above, FMCTI revoked Fischer's conditional offer of employment for failure to meet the pre-employment condition of passing a background check.  Fischer is unable to show that FMCTI's reason for revoking her offer is pretext for retaliation.  Indeed, Fischer offers no evidence beyond her own speculative belief that revocation of her job offer had any connection to the sexual harassment investigation.  Fischer depo. 154:23-155:4.  Accordingly, because Fischer lacks evidence of any connection between her alleged protected activity and the revocation of her offer of employment, summary judgment on Fischer's retaliation claim is appropriate.

## IV.    CONCLUSION

For the foregoing reasons, FMC Technologies, Inc. respectfully requests that the Court enter summary judgment on all of Fischer's claims and that FMCTI be granted its costs and all further relief to which it may be entitled.

Dated June 5, 2015

Respectfully submitted,

*/s/Kerry E. Notestine*
Adam W. Childers, OBA #18673

-- Of the Firm --

CROWE & DUNLEVY, P.C.
Braniff Building
324 North Robinson Avenue, Suite 100
Oklahoma City, OK 73102
405.235.7741 (Telephone)
405.272.5956 (Telecopier)
adam.childers@crowedunlevy.com

-- AND --

Kerry E. Notestine
(*pro hac vice*)
Texas State Bar No. 15116950
knotestine@littler.com
Jillian B. Mertz
(*pro hac vice*)
Texas State Bar No. 24072897
jmertz@littler.com
LITTLER MENDELSON, P.C.
1301 McKinney Street
Suite 1900
Houston, TX  77010
713.951.9400 (Telephone)
713.951.9212 (Telecopier)

<u>CERTIFICATE OF SERVICE</u>

I certify that on June 5, 2015, I electronically transmitted the attached document to the Clerk of the Court using the ECF System for filing and transmittal of a Notice of Electronic Filing to the following ECF registrant:

Terry A. Hall
Hall, Nalley & Holloway
4000 N. Kickapoo
Shawnee, OK 74804
thall@okhnlaw.com

*/s/Jillian B. Mertz*
Jillian B. Mertz